IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CT-03315-M

| | | |
|---|---|---|
| JUSTIN MICHAEL TYSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LIEUTENANT GAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This cause is before the court on plaintiff's non-dispositive motions. See [D.E. 93, 96, 104, 110, 122, 124]. Defendants oppose most of these motions. See [D.E. 97, 102, 114, 127].

Relevant Procedural History:

On October 29, 2019, Justin Michael Tyson ("plaintiff"), a pretrial detainee proceeding *pro se* and without prepayment of fees, filed a complaint under 42 U.S.C. § 1983 generally alleging claims of excessive force and delay of needed medical treatment at Pitt County Detention Center (the "Detention Center") on December 14 and 15, 2017. See Compl. [D.E. 1]; Mot. [D.E. 10].

On August 18, 2020, the court conducted its initial review, allowed plaintiff's excessive force and deliberate indifference claims to proceed, but dismissed his claims premised on the Fourteenth Amendment's Equal Protection Clause and the Fifth Amendment. Order [D.E. 11].

On October 16, 2020, defendants moved to dismiss the complaint. Mot. [D.E. 33] (citing Fed. R. Civ. P. 12(b)(6). Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion to dismiss, the consequences of failing to respond, and the response deadline. [D.E. 35]. On November 6, 2020, plaintiff timely responded in opposition to defendants' motion to dismiss. Pl's Resp. [D.E. 40].

On September 22, 2021, the court issued an order that, among other things, granted in part defendants' motion to dismiss the complaint as to plaintiff's claims against defendants in their official capacities but denied the motion to dismiss on all other grounds. Order [D.E. 55].

On October 13, 2021, the court denied plaintiff's motion seeking reconsideration of the court's dismissal of his official capacity claims. Order [D.E. 70].

On October 18, 2021, plaintiff moved for admissions, to compel discovery, and for production of documents, Mot. [D.E. 71], as well as for joinder, Mot. [D.E. 72] (seeking to add as defendants Officer Mobley ("Mobley") and Officer Sergeant Page ("Page")).

On January 3, 2022, plaintiff moved to compel discovery and for sanctions, fees, and costs. Mot. [D.E. 81], as well as for an extension of time to complete discovery, Mot. [D.E. 82].

On February 8, 2022, the court, among other things, denied plaintiff's motion to compel without prejudice to allow plaintiff to submit supplemental discovery requests. Order [D.E. 91].

On February 9, 2022, the court denied plaintiff's motion for joinder. Order [D.E. 92].

On February 18, 2022, plaintiff filed a self-styled "motion to overturn this court's decision as to the denial of plaintiff's motion seeking joinder of defendants [sic]." Mot. [D.E. 93]. Defendants responded in opposition [D.E. 102].

On February 22, 2022, plaintiff filed a self-styled "motion to overturn this court's decision to deny plaintiff's motion to compel discovery and to grant the motion to compel as to plaintiff's R.F.P. No. 1 [sic]." Mot. [D.E. 96]. Defendants responded in opposition [D.E. 97].

On March 14, 2022, plaintiff filed a self-styled "motion for spoliation and imposition of sanctions [sic]." Mot. [D.E. 103]. Defendants responded in opposition. [D.E. 108]. On April 4, 2022, the court denied this motion without prejudice. Order [D.E. 113].

On March 18, 2022, plaintiff filed a "motion to submit documents into evidence." Mot. [D.E. 104]; Mot. Attach. [D.E. 104-2]. Plaintiff avers these documents include Pitt County Job Descriptions for Advanced and Basic Detention Officers. Pl.'s Aff. [D.E. 104-1].

On April 1, 2022, plaintiff filed a self-styled "motion for a reasonable attorney's fee for prevailing on a significant issue in the litigation [sic]." Mot. [D.E. 110]. Defendants responded in opposition [D.E. 114].

On April 21, 2022, and April 26, 2022, respectively, plaintiff filed self-styled "motion[s] for spoliation and imposition of sanctions renewed [sic]." Mot. [D.E. 122]; Mot. [D.E. 124]. Defendants responded in opposition to these motions [D.E. 127], and plaintiff replied [D.E. 131].

## Discussion:

The court first notes that plaintiff has sought reconsideration of nearly every ruling in this case. These myriad filings border on vexatious and often merely seek to relitigate well-reasoned, decided issues. The court cautions plaintiff that this litigation strategy delays resolution of this matter. Absent clear error, the court will summarily deny any such future repetitive motions.

1) Plaintiff's February 18, 2022, motion for reconsideration, Mot. [D.E. 93]:

In support of this motion, plaintiff generally argues that the court erred in denying equitable tolling as to his motion seeking joinder of Mobley and Page. See Pl.'s Mem. [D.E. 93-1] at 2–5.

In opposition, defendants argue, among other things, that plaintiff is not entitled to tolling because he failed to exercise due diligence or show that defendants deceived him as to the identity of Mobley and Page. See [D.E. 102] at 2–4.

"Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment[,]" but instead are "committed to the

3

discretion of the district court." American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003).

Upon review, the court concludes plaintiff's excessive force and deliberate indifference claims against Mobley and Page relate back to his original complaint and are not clearly frivolous, and that, because of common questions of law or fact, they should be added as defendants. See 28 U.S.C. § 1915A; Fed. R. Civ. P. 15(a)(2), 20(a); Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Foman v. Davis, 371 U.S. 178, 182 (1962); Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); McGraw v. Gore, 31 F.4th 844 (4th Cir. 2022) (discussing relation back of amendments under Fed. R. Civ. P. 15(c)). Thus, the court, in its discretion, GRANTS the motion for reconsideration [D.E. 93], ALLOWS the action to proceed against Mobley and Page, and directs the parties' attention to further instructions below.

2) Plaintiff's February 22, 2022, motion for reconsideration, Mot. [D.E. 96].

Plaintiff seeks reconsideration of that part of the court's February 8, 2022, order denying plaintiff's motion seeking production of a surveillance video of the use-of-force incident. See Pl.'s Mot. Attach. [D.E. 96-1] at 2–3; Order [D.E. 91] (finding sufficient defendants' discovery response that they do not possess requested video surveillance footage identified as R.F.P. No. 1, that defendants cannot produce what they do not have, and noting that plaintiff had not provided a copy of the report he contends undermines defendants' claim that they do not possess the video).

Plaintiff contends that, contrary to the court's finding, he moved to admit documents calling into question defendants' assertion that they do not possess the video surveillance footage. Pl.'s Mot. Attach. [D.E. 96-1] at 3–4. Plaintiff avers these documents were mailed on January 9, 2022. Pl.'s Aff. [D.E. 96-3]. Plaintiff also attaches a December 14, 2017, incident report by

4

Officer John Page referencing the requested video surveillance footage. See [D.E. 96-2] at 1 (noting, among other things, that after the use-of-force incident on Dec. 14, 2017, FNP McLean attempted to evaluate plaintiff for injuries, plaintiff refused to place weight on his leg, McLean "requested to see the video to see if she could see anything which may have caused an injury," and, "after observing the video, [McLean] proceeded to F-Block medical to evaluate" plaintiff).

In opposition to this motion for reconsideration, defendants argue that, despite the fact that plaintiff has now produced Sergeant Page's incident report indicating that the relevant footage was reviewable immediately following the incident, "neither [defendants], nor the Pitt County Sheriff's Office, have a copy of the requested footage." [D.E. 97] at 4–5. Defendants attach an affidavit of Craig Pierce, the Detention Center Maintenance Supervisor, averring that: he responsible for maintaining the cameras and video data storage; video data collected from surveillance cameras is stored on in-house servers; "[e]ach server has a finite amount of data storage and, when capacity is reached, the oldest video data is automatically deleted to make room for new, incoming video data"; the amount of time video data is maintained the data from each of the 68 active cameras in the booking section is maintained approximately 36 days before being automatically deleted; "[p]ortions of video data may be maintained in perpetuity, if bookmarked and protected"; bookmarked videos are labeled by date and event description; after conducting a search, he has found no protected, bookmarked video data for the Dec. 14, 2017, use-of-force incident; the oldest bookmarked video data housed on Detention Center servers is from Aug. 23, 2018; and, although "video footage from the event December 14, 2017, altercation may have existed at one point, it is no longer in the system, and was, upon information and belief, most likely subject to automatic deletion as a result of the server being at capacity." See [D.E. 91-1].

5

As noted above, motions for reconsideration of interlocutory orders are "committed to the discretion of the district court." American Canoe, 326 F.3d at 515. A court may revise an interlocutory under the following three circumstances: (1) a subsequent trial produces substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice. See Carlson v. Boston Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017).

Here, the court's finding that plaintiff had not produced a report is not a "clear error causing manifest injustice." Cf. id. Plaintiff's subsequent production of a December 14, 2017, report referencing the surveillance footage only indicates that the video once existed; it does not vitiate the court's chief finding–that defendants could not produce video evidence that is not now in their possession. Accordingly, the court DENIES this motion for reconsideration [D.E. 96].

3) Plaintiff's March 18, 2022, "motion to submit documents into evidence," [D.E. 104]:

The court summarily GRANTS IN PART this motion [D.E. 104] to the extent plaintiff seeks to refer to these documents in future filings, but REMINDS plaintiff not to docket discovery-related materials unless ordered to do so by the court. See Local Civil Rule 26.1(a).

4) Plaintiff's April 1, 2022, motion seeking reasonable attorney's fees, Mot. [D.E. 110].

In support of this motion for attorney's fees, plaintiff cites 42 U.S.C. § 1988 and argues, among other things, he is the prevailing party on a "significant issue" in this litigation. See Mot. [D.E. 110]. Defendants oppose the motion. See [D.E. 114].

Succinctly stated, plaintiff is not a "prevailing party" for the purposes of § 1988 because he has not "'obtained an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.'" Shaw v. Hunt, 154 F.3d 161, 167 (4th Cir. 1998) (quoting Farrar v. Hobby, 506 U.S. 103, 111 (1992)). Further, because plaintiff

6

proceeds *pro se*, the attorney's fees provision of § 1988 is inapplicable. See Vaughan v. Foltz, No. 2:16-CV-61-FL, 2017 WL 4872484, at *9, n.12 (E.D.N.C. Oct. 27, 2017) (finding that, even as a "prevailing party," a *pro se* plaintiff is precluded from receiving attorney's fees under § 1988 (citing Kay v. Ehrler, 499 U.S. 432, 438 (1991))), aff'd, 825 F. App'x 131 (4th Cir. 2020). Accordingly, the court DENIES the motion seeking attorney's fees [D.E. 110].

5) Plaintiff's April 21, 2022, and April 26, 2022, "motion[s] for spoliation and imposition of sanctions renewed." Mot. [D.E. 122]; Mot. [D.E. 124].

These motions, although not precisely identical, raise the same arguments. Compare Mot. [D.E. 122], with Mot. [D.E. 124]. Plaintiff disagrees with the court's April 4, 2022, order that dismissed without prejudice his prior motion for sanctions pursuant to his claim that defendants failed to preserve the aforementioned video surveillance footage of the use-of-force incident. See Order [D.E. 113] (considering plaintiff's arguments that defendants "should have reasonably known that surveillance video footage may be relevant to anticipated litigation," and defendants' failure to preserve this video footage evinces a "culpable state of mind"; discussing the Detention Center's video preservation policy; and determining that plaintiff has not shown that defendants willfully destroyed this video evidence).

In support, plaintiff reiterates that defendants had a duty to preserve the video, and newly asserts that, within one month of the use-of-force incident, he sent defendant Gay a letter about anticipated litigation, and "Gay responded that the only way for Plaintiff to receive the video was through the correct legal procedure involving summons." Pl.'s Mot. Attach. [D.E. 122-1] at 4. Plaintiff asserts that Gay "willfully engaged in conduct resulting in the destruction of the evidence" because "Gay did not take any action toward bookmarking the surveillance video footage,

7

amounting to spoliation of material evidence," and, despite knowing about possible destruction of the video footage, Gay also did not give plaintiff access to it before it was destroyed. Id. at 5–6.

In opposition to these motions, defendants argue that plaintiff essentially restates his prior claims and merely disagrees with the court's order denying sanctions for spoliation. Defs.' Resp. [D.E. 127] at 2. Defendants also argue plaintiff's newly raised claim–that defendants had a duty to preserve video evidence because Gay was notified of his intent to sue within a month of the incident–is a new fact that he should be estopped from presenting. Id. at 2–3. Defendants attach the affidavit of Gay. See [D.E. 127-1] (averring, in relevant part: Gay does not recall receiving any letter from plaintiff after the use-of-force event; if Gay had received a letter requesting video footage, it would have been turned over to Captain Roumpf, the officer charge of the surveillance system; Gay did not have unilateral authority to disclose or release video footage to anyone; and Gay never deleted or attempted to delete video footage from the facility's surveillance system).

Plaintiff's reply argues he should not be estopped as to the December 2017 letter he sent informing Gay about prospective litigation that alerted defendants of the need to preserve video evidence. Pl.'s Reply [D.E. 131] at 2. Plaintiff asserts that Gay "responded to the letter" and "stated that he could not provide the video, it would have to be obtained through the legal summons procedure [sic]." Id. Plaintiff contends Gay did not inform him about the process for accessing the video or that it would be destroyed or deleted. Id. Plaintiff argues Gay was obligated to ensure access to the video footage or give notice that the evidence may be destroyed. Id. at 3. Plaintiff notes purported discrepancies between the affidavits of Craig Pierce and defendant Gay, and contends that, "with this act of perjury, the defendant's word is not credible[,] and all facts alleged in William Gay's affidavit . . . should be discarded due to his perjury . . . [and] the criminal

8

violation should be handled accordingly [sic]." Id. Plaintiff notes it is understandable that Gay may not remember receiving the letter five years ago, but asserts that he did send it. Id. Plaintiff contends that, due to this letter, defendants knew plaintiff needed the video evidence and "this court could reasonably infer that Defendants acted with the intent of destroying evidence and the willful inaction to preserve material evidence leading to the eventual destruction of evidence [sic]." Id. at 3–4. Plaintiff asserts Gay "should have acted in good faith and brought it to the attention and notified correct personnel that the video needed to be bookmarked and preserved upon receipt of plaintiff's letter," but Gay instead "acted with a culpable state of mind and did not notify the maintenance supervisor[.]" Id. at 5. Plaintiff asks the court to grant his request for sanctions, his motion for summary judgment, and that "the penalty for perjury administered [sic]." Id. at 6.

Plaintiff's claim that Gay perjured himself is without merit; there is no inherent conflict between Gay's averment–that Captain Roumpf was the officer in charge of the surveillance system–and Craig Pierce's averment–that, since 2013, he was responsible for maintenance of the Detention Center security cameras and video data storage. The court now turns to the spoliation argument.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted). "The imposition of a sanction . . . for spoliation of evidence is an inherent power of federal courts . . . and the decision to impose such a sanction is governed by federal law." Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 449 (4th Cir. 2004) (citation omitted). "Moreover, spoliation is not a substantive claim or defense but a rule of evidence, and thus is administered at the discretion of

9

the trial court." Id. at 450 (citation and internal quotation marks omitted).

The court looks to the following three factors determine whether a sanction is warranted: (1) the relevance of the evidence to the litigation; (2) whether the spoliating party had a duty to preserve the evidence; and (3) whether the spoliating party acted "with the requisite level of intent, which varies depending on the sanction imposed." Nucor Corp. v. Bell, 251 F.R.D. 191, 194 (D.S.C. 2008) (citations omitted). The court may draw an "adverse inference against a party whose intentional conduct causes not just the destruction of evidence, . . . but also against one who fails to preserve or produce evidence[.]" Hodge, 360 F.3d at 450 (citations omitted). However, "such an inference 'cannot be drawn merely from [the] negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.'" Id. (citations omitted).

Here, because the video footage in question may be relevant to the litigation, the first factor weighs in plaintiff's favor. As to the second factor, as noted above, Gay avers he does not recall receiving a letter from plaintiff after the use-of-force incident. Plaintiff avers that the letter was sent, but does not produce the letter. Presuming, without deciding, that plaintiff did notify Gay of an intent to sue within a month of the incident, the second factor would weigh in plaintiff's favor. Nevertheless, the third factor weighs strongly in favor of defendants because, aside from his unsupported say-so, plaintiff has presented no evidence that Gay or other defendants willfully, as opposed to negligently, deleted video footage or allowed for its destruction. Thus, plaintiff fails to demonstrate an adverse inference is warranted. Cf. Nucor 251 F.R.D. at 202 (finding, in light of a showing that the destruction of evidence was deliberate and in bad faith, an adverse inference charge to the jury was an appropriate sanction); see also Hale v. City of Biloxi, 731 F.

10

App'x 259, 265 (5th Cir. 2018) (per curiam) (unpublished); Lindell v. Boughton, No. 18-CV-895-SLC, 2020 WL 3893069, at *2 (W.D. Wis. July 10, 2020) (unpublished). Accordingly, the court DENIES WITHOUT PREJUDICE the motions seeking sanctions for spoliation of evidence [D.E. 122, 124].

## Conclusion:

In sum, the court:

1) GRANTS plaintiff's February 18, 2022, motion for reconsideration [D.E. 93], ALLOWS the excessive force and deliberate indifference claims to proceed against Mobley and Page, DIRECTS counsel for defendants to file a response, not later than June 3, 2022, indicating whether service as to Mobley and Page can be waived and, if not, providing the full names and last known addresses for service on these defendants, under seal if necessary, and STAYS all deadlines until these issues are resolved;

2) DENIES plaintiff's February 22, 2022, motion for reconsideration [D.E. 96];

3) GRANTS IN PART plaintiff's March 18, 2022, "motion to submit documents into evidence" [D.E. 104]:

4) DENIES plaintiff's April 1, 2022, motion seeking attorney's fees [D.E. 110]; and

5) DENIES WITHOUT PREJUDICE plaintiff's April 21, 2022, and April 26, 2022, motions seeking sanctions for spoliation of evidence [D.E. 122, 124];

SO ORDERED, this __16th__ day of May 2022.

RICHARD E. MYERS II
Chief United States District Judge