IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CT-03315-M

| | | |
|---|---|---|
| JUSTIN MICHAEL TYSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LIEUTENANT GAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This cause is before the court on defendant Mobley's motion for summary judgment, Mot. [D.E. 181], defendant Page's motion for summary judgment, Mot. [D.E. 193], and plaintiff's motions for relief from judgment, Mot. [D.E. 209], Mot. [D.E. 218], Mot. [D.E. 219].

Relevant Procedural History:

On October 29, 2019, Justin Michael Tyson ("plaintiff"), a pretrial detainee proceeding without prepayment of fees, filed *pro se* a complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 5]. Plaintiff twice moved to amend his initial complaint. See [D.E. 9, 10].

In the operative complaint, plaintiff names as defendants Pitt County Detention Center ("Detention Center") employees Lieutenant Gay and Officers McDaniel, Jordan, Andrews, Taylor, Russell, Singleton III, and Woolard (collectively, the "original defendants"), and alleges that, between December 14 and 15, 2017: these defendants, (aside from Gay) used excessive force, slamming him on his face and causing both a "busted forehead" and a dislocated hip; Gay "denied me outside medical treatment for my injury, leaving me in a cell in excruciating and unbearable pain for a 28-hour time period"; "officers would not let nurses bring medication inside my cell while my hip was dislocated"; "my morning and lunch meals were not brought inside my cell

while I could not walk"; he was treated differently from other inmates over a minor violation; he was denied medication and attention from an outside medical provider; "harassment took place on various occasions" after the incident; he underwent right hip surgery on December 15, 2017; and he continues to suffer mental and physical effects from these occurrences. See 2d. Am Compl. [D.E. 10] at 3–9. Plaintiff seeks, *inter alia*, monetary damages. Id. at 10.

On January 8, 2020, the case was reassigned to the undersigned judge via a text order.

On August 18, 2020, the court, *inter alia*, granted plaintiff's motions to amend, conducted its initial review of the complaint, and allowed the action to proceed in part as to plaintiff's excessive force and deliberate indifference claims. Order [D.E. 11].

On October 16, 2020, the original defendants filed a joint motion to dismiss the complaint for failure to state a claim, Mot. [D.E. 33], together with a memorandum in support [D.E. 34]. Plaintiff responded in opposition to this joint motion to dismiss. See [D.E. 40, 44].

On September 22, 2021, the court, *inter alia*, granted in part the original defendants' joint motion to dismiss as to claims against them in their official capacities, but denied the motion on all other grounds, finding that plaintiff had plausibly alleged a viable deliberate-indifference claim as to Gay and viable excessive-force claims as to these other defendants. See Order [D.E. 55].

On October 5, 2021, the original defendants answered the complaint. See [D.E. 59–66].

On October 18, 2021, plaintiff moved for joinder, seeking to add as defendants Detention Center officers Mobley ("Mobley") and Sergeant Page ("Page"). Mot. [D.E. 72]. The court denied this motion, Order [D.E. 92], and plaintiff moved for reconsideration, Mot. [D.E. 93].

On March 18, 2022, plaintiff filed a motion summary judgment, Mot. [D.E. 105], with a memorandum in support and a statement of facts, see [D.E. 105-1], and an affidavit [D.E. 105-2].

2

On April 11, 2022, the original defendants filed a joint motion for summary judgment, Mot. [D.E. 116], a memorandum in support [D.E. 117], a statement of material facts [D.E. 118], and an appendix [D.E. 119]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the original defendants' motion, the consequences of failing to respond, and the response deadline. [D.E. 120].

On May 11, 2022, the original defendants filed a response in opposition to plaintiff's motion for summary judgment [D.E. 129], together with a statement of material facts [D.E. 130].

On May 16, 2022, the court, among other things, granted plaintiff's motion for reconsideration, joined Page and Mobley as defendants, and allowed the operative second amended complaint to proceed against Page and Mobley. Order [D.E. 132].

On May 20, 2022, plaintiff filed, among other things, a memorandum of law in opposition to the original defendants' joint motion for summary judgment. Pl.'s Mem. [D.E. 133].

On May 31, 2022, plaintiff filed a supplemental response in opposition the original defendants' joint motion for summary judgment. Pl.'s Supp. Resp. [D.E. 136].

On July 28, 2022, Mobley moved to dismiss the complaint, Mot. [D.E. 160], and filed a memorandum in support, [D.E. 161].

On August 5, 2022, Page answered the complaint. [D.E. 162].

On August 8, 2022, plaintiff responded to Mobley's motion to dismiss. [D.E. 164].

On August 11, 2022, Mobley filed a reply to plaintiff's response. [D.E. 165].

On August 16, 2022, the court denied Mobley's motion to dismiss. Order [D.E. 167].

On September 6, 2022, Mobley answered the complaint [D.E. 175], and moved to deem the answer timely filed, Mot. [D.E. 176]. The court granted this motion. Order [D.E. 178].

3

On October 21, 2022, plaintiff moved for summary judgment as to Mobley and Page, Mot. [D.E. 179], and filed a memorandum in support [D.E. 179-1], a statement of facts [D.E. 179-2], an affidavit [D.E. 179-3], an appendix [D.E. 179-4], and exhibits [D.E. 179-5].

On October 27, 2022, the court, *inter alia*: denied both of plaintiff's motions for summary judgment; granted in part the original defendants' joint motion for summary judgment as to the excessive force claims against McDaniel, Russell, Singleton III, Taylor, and Woolard, and as to the deliberate-indifference claim against Gay; denied the original defendants' motion for summary judgment as to the excessive-force claims against Jordan and Andrews; dismissed without prejudice plaintiff's newly raised claims; allowed the parties until December 5, 2022, to file a response, if any, to the court's notice under Fed. R. Civ. P. 56(f); and directed the clerk to terminate as defendants McDaniel, Russell, Singleton III, Taylor, Woolard, and Gay. Order [D.E. 180].

On October 28, 2022, Mobley moved for summary judgment, Mot. [D.E. 181], and filed a memorandum in support [D.E. 182], a statement of material facts [D.E. 183], and an appendix [D.E. 184]. Pursuant to Roseboro, 528 F.2d at 310, the court notified plaintiff about Mobley's motion, the consequences of failing to respond, and the response deadline. [D.E. 185].

On November 4, 2022, Page moved for summary judgment, Mot. [D.E. 186], and filed a memorandum in support with attachments, see [D.E. 187].

On November 7, 2022, the court entered a notice of deficiency as to defendant Page's motion, and plaintiff filed, *inter alia*, a response to the court's notice under Fed. R. Civ. P. 56(f), see [D.E. 188], and a notice of appeal as to the court's October 27, 2022, order, see [D.E. 189].

On November 9, 2022, defendant Page filed the instant motion for summary judgment, Mot. [D.E. 193], a memorandum in support [D.E. 194], a statement of material facts [D.E. 195],

4

and an appendix [D.E. 196]. Pursuant to Roseboro, 528 F.2d at 310, the court notified plaintiff about Page's motion, the consequences of failing to respond, and the response deadline [D.E. 197].

On November 16, 2022, plaintiff responded in opposition to Mobley's motion for summary judgment. Pl.'s Resp. [D.E. 198].

On November 21, 2022, Mobley filed a reply [D.E. 199], and plaintiff filed a response in opposition to Page's motion for summary judgment, Pl.'s Resp. [D.E. 200], and a motion for attorney's fees, Mot. [D.E. 201].

On November 23, 2022, Mobley filed a response in opposition to plaintiff's motion for attorney's fees. Mobley's Resp. [D.E. 203].

On December 5, 2022, plaintiff filed a reply as to his motion for attorney's fees [D.E. 205].

On December 21, 2022, the court denied plaintiff's motion for attorney's fees, notified all parties that the court is considering entering summary judgment for the original defendants, pursuant to Fed. R. Civ. P. 56(f), on Prison Litigation Reform Act ("PLRA") exhaustion grounds, directed defendants seeking to rely upon exhaustion arguments to docket relevant Detention Center records and declarations or affidavits by January 5, 2023, and allowed plaintiff until January 20, 2023, to file a response. Order [D.E. 208].

On January 3, 2023, the court docketed plaintiff's motion for relief from judgment or order, see Mot. [D.E. 209], and memorandum in support, [D.E. 209-1].

On January 5, 2023, Mobley and the original defendants filed a joint response to the court's December 21, 2022, order [D.E. 211], the affidavit of a Pitt County Sheriff's employee, Detention Center Captain Nancy Poston, [D.E. 211-1], and a Detention Center grievance log [D.E. 211-2].

On January 6, 2023, Page filed a response to the December 21, 2022, order. [D.E. 212].

5

On January 19, 2023, Mobley and the original defendants filed a response in opposition to plaintiff's motion for relief from judgment or order. [D.E. 214].

On January 24, 2023, the court docketed plaintiff's response to the court's December 21, 2022, order. See [D.E. 215].

On January 31, 2023, plaintiff moved the court to grant on the grounds of default his motion for relief from judgment as to defendants Mobley and Page, respectively, see Mot. [D.E. 218]; Mot. [D.E. 219], and Mobley and the original defendants responded in opposition, [D.E. 220].

Defendants' Motions for Summary Judgment:

1) The Parties Arguments:

In support of their motions for summary judgment, Mobley and Page argue, *inter alia*, that plaintiff failed to exhaust his available administrative remedies under the PLRA before filing the instant action. Mobley Mem. [D.E. 182] at 5–6; Page Mem. [D.E. 194] at 18–19.

In his responses in opposition to these defendants' motions for summary judgment, plaintiff did not address the issue of PLRA exhaustion. See Pl.'s Resp. [D.E. 198]; Pl.'s Resp. [D.E. 200].

In their joint response, Mobley and the original defendants argue, *inter alia*: they have not waived a failure-to-exhaust defense; plaintiff did not suffer prejudice or unfair surprise because he had sufficient prior notice of, was aware of, and was actively addressing this affirmative defense in his filings; and Detention Center grievance procedure was not unavailable, but instead was forfeited by plaintiff when he filed his administrative grievances as to the incidents at issue in this case eight months after the expiration of the procedure's deadline. See [D.E. 211] at 6–11.

Page's response notes he lacks access to documents, but refers to the documents submitted by Mobley and the original defendants and adopts these defendants' arguments. See [D.E. 212].

6

In his response to the court's December 21, 2022, order, plaintiff first re-asserts his spurious contention that he is entitled to attorney's fees. See Pl.'s Resp. [D.E. 215] at 1–2.

Next, plaintiff argues that, as to defendants' failure-to-exhaust defense, "jail administrators, specifically the lieutenant, did choose to consider the merits of plaintiff's untimely grievance in the September 26, 2018, grievance response[,]" because "the lieutenant responded to the grievance and informed plaintiff the he needed to file another grievance specifying what he is grieving about as there is multiple issues listed [sic]." Id. at 2 (citing [D.E. 109]; [D.E. 211]). Plaintiff contends: "This choice to consider the merits of Plaintiff's untimely grievance satisfies the exhaustion requirement [sic]." Id. (citing Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) for the proposition that, "if prison administrators choose to consider the merits of an untimely grievance, then the claim has been exhausted" (citation omitted)). Plaintiff argues:

> the lack of a response to plaintiff's grievance specifying the issues he was grieving [was] a defect procured by both the inaction and action of prison officials. The action that the grievance officer took in forming the defect in exhaustion is that of considering Plaintiff's untimely grievance and telling Plaintiff to file another grievance and specify what he is grieving as there is multiple issues listed. The inaction as to the grievance officer that formed the defect in exhaustion took place when the grievance officer failed to respond to Plaintiff's resubmitted grievance form specifying the issues that he was grieving about.

Id. (citing grievances previously docketed at [D.E. 109-1]).

Plaintiff asserts, "the district court is 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials.'" Id. (quoting Hill v. O'Brien, 387 F. App'x 396, 400 (4th Cir. 2010) (per curiam) (unpublished); Aquilar–Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)). Plaintiff also re-asserts, "because the grievance officer Lieutenant did choose to consider the merits of Plaintiff's untimely grievance, the claim has been exhausted." Id. (citing [D.E. 109]; Abitz, 416 F.3d at 584).

7

Finally, plaintiff argues that, because Page responded after January 5, 2023, the court should not consider Page's response and the case should continue as to Page. Id. at 2–3.

2) Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 247–48, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). To determine whether a genuine issue of material fact exists for trial, the court views the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

3) Discussion:

The PLRA states, in relevant part, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). "[T]he PLRA's exhaustion requirement applies to all

8

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (citation, alteration, and internal quotation marks omitted).

Administrative exhaustion under the PLRA, however, is mandatory only if the grievance process is actually "available" to the prisoner. See Ross v. Blake, 578 U.S. 632, 642 (2016). Grievance procedure is not "available" when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643–44; see Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022); Moss v. Harwood, 19 F.4th 614, 621–23 (4th Cir. 2021); see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

First, plaintiff's objection to Page's response is inapt. The December 21, 2022, order directed defendants to supplement with documents and affidavits by January 5, 2023, but set no strict argument deadline. Mobley and the original defendants timely filed responsive documents, an affidavit, and arguments. Page's response the following day, which merely disclaims access to these documents and adopts arguments, was not untimely under a fair reading of the order.

Next, failure to exhaust administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161,

9

167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017). The court now considers whether this defense was untimely or waived. "*In General*. In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]" Fed. R. Civ. P. 8(c). Although, as a general rule, "a party's failure to raise an affirmative defense in the appropriate pleading results in waiver . . . absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 612 (4th Cir. 1999) (internal citation omitted) (collecting cases), overruled on other grounds by Desert Palace v. Costa, 539 U.S. 90 (2003).

The court previously noted that Mobley and the original defendants cited plaintiff's failure to exhaust administrative remedies as a defense in their answers, but did not argue this defense in support of earlier dispositive motions. Order [D.E. 208] at 10 (citing Answers [D.E. 59–66, 175]; Mem. [D.E. 34]; Mem. [D.E. 117]; Mem. [D.E. 161]). Page, by contrast, argues failure to exhaust in his instant pre-trial dispositive motion, but did not raise the defense in his answer. Id. (citing Page Answer [D.E. 162]). Notably, however, plaintiff proactively raised exhaustion arguments both before Page and Mobley answered the complaint and before the original defendants moved for summary judgment. See Pl.'s Mot. [D.E. 105-1] at 19–20 (arguing, in response to the failure-to-exhaust defense in the original defendants' answers, that he submitted Aug. 27, Sept. 19, Sept. 26, and Nov. 9, 2018, grievances as to the events of Dec. 14 and 15, 2017, and he received a Sept. 24, 2018, response); Pl.'s Aff. [D.E. 109] at 1; Pl.'s Aff. Attach. [D.E. 109-1] at 1–6.

Because plaintiff neither alleges nor demonstrates unfair surprise or prejudice, this defense was neither untimely nor waived by any defendant. See Brinkley, 180 F.3d at 612; Beard v. John Hiester Chevrolet, LLC, No. 5:21-CV-173-D, 2022 WL 16840332, at *6 (E.D.N.C. Nov. 9, 2022);

10

Short v. Walls, No. CIV.A. 2:07-0531, 2010 WL 839430, at *5 (S.D.W. Va. Mar. 5, 2010) (finding failure-to-exhaust defense not waived when raised in defendants answer but not argued until a second motion for summary judgment (citation omitted)), aff'd, 412 F. App'x 565 (4th Cir. 2011); cf. S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co., 353 F.3d 367, 373 (4th Cir. 2003); Blake v. Maynard, No. 8:09-CV-02367-AW, 2012 WL 1664107, at *4 (D. Md. May 10, 2012), on reconsideration, No. 8:09-CV-02367-AW, 2012 WL 5568940 (D. Md. Nov. 14, 2012); Carr v. Hazelwood, No. CIV.A.7:07CV00001, 2008 WL 4556607, at *3 (W.D. Va. Oct. 8, 2008), report and recommendation adopted, No. 7:07CV00001, 2008 WL 4831710 (W.D. Va. Nov. 3, 2008).

The court now turns to the record to determine whether plaintiff exhausted his available administrative remedies. As the court previously noted, Mobley and Page respectively rely upon the affidavits of Lieutenant Thomas Corprew and Page to support their failure-to-exhaust arguments. Order [D.E. 208] at 7–9. Corprew and Page aver, *inter alia*: the Detention Center's grievance procedure is reflected in the Inmate Handbook; this grievance procedure requires that grievances be submitted within seven days of the incident giving rise to the complaint; this case is premised on events on December 14 and 15, 2017; and a review of the Detention Center grievance log reflects that plaintiff did not file any grievance within seven days of these events. See Corprew Aff. [D.E. 184-3] at ¶¶7–8, 13, 21–23; Page Aff. [D.E. 194-1] at ¶¶48–50, 54, 61–63.

The Inmate Handbook, reflects, *inter alia*: the grievance procedure is "for legitimate problems, complaints, or concerns"; complaints first should be directed to a detention officer; if the complaint is not resolved, an inmate may request a Grievance Form which "must be filed within seven days of the incident"; and inmates normally receive a written answer to the grievance within fifteen days. See Mobley App. [D.E. 184-4] at 4; Page Mem. Attach. [D.E. 194-2] at 4.

11

As the court noted in its prior order, "the record reflects a November 29, 2017, inmate medical screening with what appears to be plaintiff's signature acknowledging that he received a copy of the Inmate Handbook and agreed to 'obey the rules/procedures of this facility.'" Order [D.E. 208] at 9 (citing Mobley App. [D.E. 184-5] at 1–2). The court also noted that the record reflects "plaintiff's attachment of four Grievance Forms, three of which reference the alleged events of December 14 and 15, 2017, and one of which indicates that he had not received a response to these three grievances aside from a request that he re-submit a specified grievance." Id. at 10 (citing Pl.'s Aff. Attach. [D.E. 109-1] at 1–7; Pl.'s Mem. [D.E. 105-1] at 9, ¶19).

Plaintiff's August 27, 2018, grievance form lists the date of the incident as December 14, 2017, lists defendants Gay, McDaniel, Jordan, Andrews, Taylor, Russell, and other non-defendants as the officers involved, but has no markings to indicate that this grievance form was accepted by a Detention Center officer. Pl.'s Aff. Attach. [D.E. 109-1] at 6. The grievance states:

> These officers used force to detain me which led to me being slammed face first on my forehead [illegible] my right hip being dislocated. I could have easily died and lost my life if I moved or turned my head to the right or left in any kind of manner. Since I've been down here since 7/30/18[,] these same officers have been giving me constant problems even planting items in my cell and deliberately lying on me in order to get me put on lockdown. I feel they are slandering my name by giving me a list of infractions that I am not guilty of and finding me guilty even though they know I am not guilty, causing the officers in authority like sergeants, lieutenants, and captains to look at me as a bad person or a threat to the inmate population when I'm actually not. When hip dislocation occurred older slim nurse with short blonde hair and glasses denied me access to outside medical/Vidant. I was left in a cell in block D-1 for over 24 hours with a dislocated hip.

Id.

Plaintiff's September 19, 2018, grievance form lists the incident dates as December 14, 2017, and July 30 through September 19, 2018, and lists Gay, McDaniel, Jordan, Andrews, Taylor, Russell, and other non-defendants as the officers involved. Id. at 5. The grievance states:

12

> These officers used force to detain me which led to me being slammed face first on my forehead and my right hip dislocated. I could have easily died or lost my life if I moved or turned my head to the right or left in any kind of way. Since I've been down here since 7/30/18[,] these same officers have been giving me constant problems, even planting items in my cell and deliberately [illegible] on me in order to get me put on lockdown. I feel they are slandering my name by giving me a list of infractions that I am not guilty of and finding me guilty even though they know that I am not guilty, causing the officers in authority like sergeants, lieutenants, and captains to look at me as a bad person or a threat to the inmate population when I'm not. When hip dislocation occurred, Nurse McLean denied me access to outside medical Vidant. I was left in a cell in D-Block for over 24 hours with a dislocated hip. Officers involved with hip dislocation constantly work the unit I'm in and harass me. I feel like [they're] stalking me.

Id.

This grievance form was accepted by a Detention Center officer on September 20, 2018, and bears the following reply: "Forwarded to Captain [illegible] 09-24-18. Please write another grievance and specify what you are grieving about. Multiple things are listed. So please inform me what you are grieving so the grievance can be answered by the appropriate person." Id.

Plaintiff's September 26, 2018, grievance lists the incident dates as December 14, 2017, and July 30 to September 19, 2018, lists Gay, McDaniel, Jordan, Andrews, Taylor, Russell, and other non-defendants as the officers involved, has markings appearing to indicate it was accepted a Detention Center officer, but has nothing in the reply section. Id. at 3. The grievance states:

> In the grievance wrote on 9/19/18 I am clearly grieving about these officers continuing to harass me and stalk me after slamming me face first on the concrete floor and dislocating my hip after slamming me. These officers are continuing to harass me and I went in to detail on the grievance that I wrote on September 19, 2008, telling you the different ways they are harassing me after the fact in order to make of fun of me and the fact that the incident that took place on December 14, 2017, almost cost me my life and sent me to the hospital. No matter what block I've been in, these officers always work where I'm housed. Is what the grievance on the 19th of September 2018 is stating [sic].

Id.

13

Plaintiff's grievance dated November 9, 2018, lists as the incident dates as August 31, September 26, and October 23, 2018, lists the grievance officer as the officer involved, has markings appearing to indicate it was accepted by a Detention Center officer on November 9, 2018, but has nothing written in the reply section. Id. at 1. This grievance states:

> I have written multiple grievances about different situations concerning Pitt County Detention Center Officers and their unethical behaviors. I have not gotten a response to a total of 4 grievances that I have bene waiting on since 8/31/18. That is almost a 3-month waiting period, and you are supposed to respond to all grievances within 14-day time span. I did not receive a response to all grievance written on 8/31/18, 9/26/18, or 10/23/18, and the response you sent on 9/24/18 told me to write another grievance and specify what I am talking about when the grievance I sent on 9/19/18 clearly states one event that I am talking about and includes multiple people. I am asking that you respond to all grievances that I submitted since August 31st, 2018 due to the fact that I summitted them for a reason and I want my grievances to be exhausted correctly.

Id.

Captain Poston avers, *inter alia*, that: she reviewed plaintiff's complete Detention Center grievance log from November 2017 through 2021; all located grievances are attached; but, despite plaintiff submitting as part of this litigation grievance forms dated August 27, September 19, September 26, and November 9, 2018, Poston could not locate these missing grievances after an exhaustive search. See Poston Aff. [D.E. 211-1] at ¶¶5–8; see also [D.E. 211-2] at 1–71 (attaching plaintiff's various located grievances spanning from Aug. 17, 2018, to Sept. 14, 2021).

The court accepts as true plaintiff's assertion that he submitted these August 27, September 19, September 26, and November 9, 2018, grievances. The court also accepts as true plaintiff's statement that he received no response to these grievances aside from the above-noted September 24, 2018, response to the September 19, 2018, grievance. Nevertheless, to the extent these grievances raise claims as to the events of December 14 and 15, 2017, at issue in this suit, these

14

grievances were all untimely under the Detention Center's grievance procedure. As noted above, the grievance procedure requires inmates to file a Grievance Form "within seven days of the incident," see Mobley App. [D.E. 184-4] at 4; Page Mem. Attach. [D.E. 194-2] at 4, whereas plaintiff filed the earliest of these grievances eight months later. Notably, plaintiff does not dispute the veracity of the Detention Center grievance procedure's seven-day deadline; instead, plaintiff acknowledges that these grievances were untimely. See Pl.'s Resp. [D.E. 215] at 2–3.

Contrary to plaintiff's contentions, see id., the September 24, 2018, response to his September 19, 2018, grievance merely directed him to re-file a grievance specifying which of the various incidents noted therein he was attempting to grieve; this response did not consider any of his claims on the merits, see Pl.'s Aff. Attach. [D.E. 109-1] at 5. Thus, the Detention Center's failure to otherwise respond to these untimely grievances is distinguishable from cases finding the PLRA exhaustion defense was waived pursuant to a prison's review of untimely grievances on the merits. Cf. Abitz, 416 F.3d at 584; Rinaldi v. United States, 904 F.3d 257, 272 n.14 (finding, where a prison chooses not to enforce its own exhaustion procedures, "merits review satisfies exhaustion under the PLRA" (collecting cases)); Hill v. Curcione, 657 F.3d 116, 125 (2d Cir. 2011) (collecting cases for the proposition that "other circuits have held that a late filing that is accepted and decided on the merits fulfills the exhaustion requirement of the PLRA").

Also, contrary to plaintiff's assertions, because he acknowledges his grievances as to the subject matter of this suit were untimely when filed, see Pl.'s Resp. [D.E. 215] at 2–3, this is not a case where the defects in exhaustion were "procured from the action or inaction of prison officials." Hill, 387 F. App'x at 400 (quoting Aquilar-Avellaveda, 478 F.3d at 1225).

15

To the extent plaintiff instead contends the Detention Center's failure to give substantive written responses to his untimely grievances amounts to exhaustion of his administrative remedies, or that, because his grievances were untimely, exhaustion would have been futile, plaintiff appears to seek a "special circumstances" exception to the PLRA's administrative exhaustion requirement that the Supreme Court has rejected. See Ross, 578 U.S. at 641 ("The PLRA's history (just like its text) thus refutes a 'special circumstances' exception to its rule of exhaustion."); see also Booth, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise . . . ").

In sum, defendants have shown that, because he failed to file a grievance within seven days of the events of December 14 and 15, 2017, plaintiff failed to properly exhaust his administrative remedies under the Detention Center's policy. See Moore, 517 F.3d at 725 ("[A] prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." (internal citations omitted)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited.").

Plaintiff, by contrast, has not shown that administrative remedies were "unavailable" to him. See Ross, 578 U.S. at 642–44; see also Rinaldi, 904 F.3d at 268 ("[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." (internal citations omitted)); Albino v. Baca,

16

747 F.3d 1162, 1172 (9th Cir. 2014) (finding, once failure to exhaust is shown, the burden "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him"); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials."); Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (noting plaintiff bears the burden of showing that administrative remedies were unavailable to him (citation omitted)); cf. Griffin, 56 F.4th at 339; Hill, 387 F. App'x at 401; Hill v. Haynes, 380 F. App'x 268, 273 (4th Cir. 2010) (per curiam) (unpublished).

After considering the record evidence and the inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, the court finds that, regardless of the potential merit of plaintiff's underlying claims, defendants have proved that he failed to exhaust administrative remedies before filing this action, see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167, whereas plaintiff fails to demonstrate that the Detention Center grievance procedure was "unavailable" to him, see Ross, 578 U.S. at 643–44; Moss, 19 F.4th at 623; Moore, 517 F.3d at 725; see also Anderson, 477 U.S. at 252 (noting the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)).

Because defendants have met their burden of demonstrating the absence of a genuine issue of material fact as to plaintiff's failure to exhaust his available administrative remedies, Celotex,

17

477 U.S. at 325, but plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted), defendants all are entitled to summary judgment on PLRA exhaustion grounds, Fed. R. Civ. P. 56 (a), (f); Anderson, 477 U.S. at 249; Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85; see Woodhouse v. Duncan, 741 F. App'x 177, 178 (4th Cir. 2018) (per curiam) (unpublished) ("'[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.'" (quoting Small v. Camden Cty., 728 F.3d 265, 271 (3d Cir. 2013))); Baxley v. Jividen, 508 F. Supp. 3d 28, 47 (S.D.W. Va. 2020) (finding PLRA exhaustion and availability of administrative remedies are questions of law to be resolved by the court).

Accordingly, this action is dismissed without prejudice, see Booth, 532 U.S. at 735; Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004), plaintiff's pending motions for relief from judgment on other grounds are moot, and the court need not address the parties' alternative augments.

Conclusion:

In sum, the court: on PLRA exhaustion grounds, GRANTS Mobley's motion for summary judgment [D.E. 181], GRANTS Page's motion for summary judgment [D.E. 193], and GRANTS the original defendants–Andrews, Gay, Jordan, McDaniel, Russell, Singleton III, Taylor, and Woolard–summary judgment under Fed. R. Civ. P. 56(f); DISMISSES WITHOUT PREJUDICE the complaint for failure to exhaust available administrative remedies; and DENIES AS MOOT plaintiff's motions for relief from judgment [D.E. 209, 218, 219]. The clerk shall close the case.

SO ORDERED, this 7th day of February 2023.

RICHARD E. MYERS II
Chief United States District Judge